**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEHIGH GAS WHOLESALE, LLC, et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  23-953** |
| | : | |
| **BREAKTIME CORNER MARKET,** | : | |
| **LLC, et al.** | : | |

**MEMORANDUM**

**SCHMEHL, J.  /s/ JLS**                                        **DECEMBER 21, 2023**

Plaintiffs Lehigh Gas Wholesale LLC, Lehigh Gas Wholesale Services, Inc. and

LGP Realty Holdings LP (collectively,"Lehigh") brought this action seeking, *inter alia*, a

declaration that its decision to not renew a franchise relationship it had with

Defendants Breaktime Corner Market Kansas, LLC, Corner Market 50 LLC, Corner

Market 51 LLC, Corner Market 52 LLC, Corner Market 53 LLC, Corner Market 54 LLC,

Corner Market 55 LLC, Corner Market 56 LLC, Corner Market 57 LLC, Corner Market

58 LLC, Corner Market 59 LLC, Corner Market 60 LLC, Corner Market 61 LLC, Corner

Market 62 LLC, Corner Market 63 LLC, Corner Market 64 LLC, Corner Market 65 LLC,

Corner Market 66 LLC, Corner Market 67 LLC, Corner Market 68 LLC, Corner Market

69 LLC, Corner Market 70 LLC, Corner Market 78, LLC, Corner Market 79, LLC, Corner

Market 81, LLC, Corner Market 82, LLC, Corner Market 83, LLC, Corner Market 85,

LLC, Corner Market 86, LLC, Cleveland Ventures LLC, Aldine Westfield Investments

LLC, 43 Ventures LLC, Deer Park Ventures LLC, and Channelview Ventures LLC

(collectively, the "Breaktime Station Defendants"), a group of entities managed by

Defendant Breaktime Corner Market, LLC ("Breaktime"), and their President, Defendant

Omair Bashir ("Bashir") did not violate the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C.A. §§ 2801–2841.   Presently before the court is the Defendants' renewed motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2)-(3) or, in the alternative, to transfer the case to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1404(a).[1] The Court heard oral argument on the motion. For the reasons that follow, the motion to dismiss for lack of personal jurisdiction is granted**.** However**, i**nstead of dismissing the case, the Court will transfer this matter to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1631.

## **STANDARD OF REVIEW**

A Rule 12(b)(2) motion for lack of personal jurisdiction "is inherently a matter which requires resolution of factual issues outside the pleadings." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603 (3d Cir. 1990). The "plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). In responding to a defendant's Rule 12(b)(2) motion, the plaintiff need not "rely on the bare pleadings alone...." *International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines*, 673 F.2d 700 (3d Cir. 1982). Courts reviewing a motion to dismiss for lack of personal jurisdiction "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992); *Pinker*, 292 F.3d at 368.

---

[1] The Court originally denied the motion without prejudice because the parties informed the Court that they wished to reach a settlement. When these efforts failed, Defendants renewed the motion.

Plaintiff Lehigh Gas Wholesale LLC is a Delaware limited liability company with its principal place of business at 645 Hamilton Street, Suite 400, Allentown, Pennsylvania 18101. ECF 1 at ¶ 2.  Plaintiff Lehigh Gas Wholesale Services, Inc. is a Delaware corporation with its principal place of business at 645 Hamilton Street, Suite 400, Allentown, PA 18101. *Id.* at ¶ 3. Plaintiff LGP Realty Holdings LP is a Delaware limited liability partnership with its principal place of business at 645 Hamilton Street, Suite 400, Allentown, PA 18101. *Id.* at ¶ 4.

 Defendant Breaktime is a Delaware limited liability company with its principal place of business at 6300 Richmond Avenue, Suite 300, Houston, Texas 77057. *Id.* at ¶ 5. The Breaktime Station Defendants are incorporated either in Texas, Colorado, Kansas, Missouri and New Mexico. *Id.* at ¶ 6. Each of the Breaktime Station Defendants share a principal place of business with Breaktime at 6300 Richmond Avenue, Suite 300, Houston, Texas. *Id.* Defendant Bashir is a citizen of Texas. *Id.* at ¶ 7.

According to the Complaint, in 2018 and 2019, Breaktime wanted to become the franchise dealer for 69 separate gasoline stations and convenience stores (the "69 Service Stations") that were owned and operated by Circle K Stores, Inc. ("Circle K"). *Id.* at ¶ 11. Circle K and Breaktime subsequently entered into a franchise relationship. *Id.* at ¶ 13. One of the contracts involved in the relationship is a fuel supply agreement and lease ("Fuel Supply Agreement") for each of the 69 Service Stations comprising the franchise relationship. *Id.* at ¶ 14. "The Fuel Supply Agreement, leases and other contracts are subject to a Security and Cross Default Agreement, as amended, through

which Circle K and Breaktime expressed an intention to treat all of the agreements comprising the franchise relationship as 'a unitary agreement in all respects.'" *Id*. at ¶ 15.

Circle K subsequently assigned the franchise agreement to Lehigh which became the owner of the 69 Service Stations and assumed Circle K's role as fuel supplier to and landlord for each of the 69 Service Stations. *Id*. at ¶ 16.

The Complaint further alleges that Bashir executed a personal guaranty of each of the Breaktime Station Defendants' obligations to Lehigh. *Id*. at ¶ 20. By October, 2022, many of the agreements between the parties had expired with the remainder scheduled to expire in the first five months of 2023. *Id*. at ¶ 21. On October 3, 2022, Lehigh submitted a proposal to Breaktime to renew the franchise relationship. *Id*. at ¶ 22. The parties discussed Lehigh's proposal over the phone and in person at Lehigh's headquarters in Allentown and Breaktime's headquarters in Houston. *Id*. at ¶ 30. The parties were ultimately unable to agree on terms to extend the franchise relationship. *Id*. at ¶ 31.

On February 6, 2023, Lehigh delivered a notice of non-renewal to Breaktime. *Id*. at ¶ 34. In a second notice of non-renewal, Lehigh notified Breaktime that the termination date for all of the agreements comprising the franchise relationship would be June 9, 2023 and that on that date Breaktime would be required to surrender the 69 Service Stations to Lehigh. *Id*. at ¶¶ 38-39.

In Count One, Lehigh seeks a declaratory judgment that it has valid grounds to non-renew the franchise relationship with Breaktime under the PMPA.  In Count Two, Lehigh claims Breaktime breached the parties' Fuel Supply Agreement by failing to maintain the Stations in conformance with certain credit card point-of-sale technology requirements. (Europay, Mastercard and Visa or "EMV"). Lehigh claims it incurred costs in excess of $1.8 million in upgrading the point-of-sale technology and that Breaktime's failure to reimburse Lehigh constitutes a breach of the parties' Security and Cross Default Agreement. In Count Three, Breaktime alleges that Lehigh has breached guarantees by failing to pay amounts owed by Breaktime under the Fuel Supply Agreements.[2]

In support of its motion to dismiss for lack of personal jurisdiction, Breaktime has submitted the affidavit of Bashir**.** ECF 8, Ex. A. Bashir avers, in pertinent part, that **"[**b]eginning in February, 2019, the Breaktime Defendants began entering into individual franchise agreements and relationships with Circle K..." *Id.* at ¶ 6. According to Bashir, the Breaktime Defendants "franchised from Circle K sixty-nine (69) separate gasoline and convenience stores located in Texas, Colorado, Kansas and New Mexico." *Id*.

Bashir avers that "[o]n or about May 5, 2020, Circle K assigned all of the separate franchise agreements entered into by the individual Breaktime Defendants to Lehigh Gas Wholesale LLC, Lehigh Gas Wholesale Services, Inc. and LGP Realty

---

[2] Following the filing by Lehigh of this action, the Breaktime Defendants brought a competing action in the Southern District of Texas concerning the non-renewal of the franchise relationship by Lehigh. Channelview Ventures LLC et al. v. Lehigh Gas Wholesale LLC et al., No. 4:23-cv-01461 (S.D. Tex., filed April 19, 2023).

Holdings LP. None of the Breaktime Defendants were a party to Circle K's and Lehigh's transaction." *Id*. at ¶ 7.

In response, Lehigh has submitted the affidavit of the Vice President of Operations for CrossAmerica Partners and its subsidiaries ("CAP"), Glenn Faust "Faust"). ECF 12-1. Faust avers that "CAP is a wholesale distributor of motor fuels" and that it "operates convenience stores and owns or leases real estate used in connection with the retail distribution of motor fuels." *Id*. at ¶ 2. CAP has its headquarters in Pennsylvania. *Id*. at ¶ 3. CAP conducts its business in Colorado, Kansas, Missouri, New Mexico and Texas through Lehigh. *Id*. at ¶ 4. Lehigh runs its operations out of its (and CAP's) headquarters in Allentown. Neither CAP nor Lehigh has regional offices outside of Eastern Pennsylvania. *Id*. at ¶ 5.

Faust avers that "Lehigh's accounting team has processed tens of thousands of Breaktime transactions totaling in the hundreds of millions of dollars" from its Allentown, Pa. headquarters. *Id*. at ¶ 8. Faust further avers that he has been in frequent contact with Bashir and that Bashir has "called and e-mailed [him] at the Allentown Headquarters hundreds of times, including to discuss the renewal and EMV-compliance issues in this action." *Id*. at ¶ 9. According to Faust, "[t]his action concern's Lehigh's decision, following negotiation, not to renew its franchise relationship with Breaktime as well as Breaktime's failure to pay for the cost of EMV-compliant fuel dispensers at the stations." *Id*. at ¶ 10. Faust avers that Breaktime sent all of its communications to Lehigh's Allentown headquarters or to Lehigh's Pennsylvania-based employees, "including Breaktime's March 1, 2023 correspondence purporting to renew the franchise relationship but only for certain stations." *Id*. at ¶ 13.

Faust further avers that "[i]n 2018, CAP and Circle K entered into an asset exchange agreement whereby CAP and Circle K agreed to swap certain 'tranches' of gas stations," including the 69 stations at issue in this action. *Id*. at ¶ 15. Faust avers that before the swap could take place, Circle K had to "secure an operator to run the stations." *Id*.

Faust avers that "at the time Circle K entered into the franchise relationship with Breaktime, both parties understood that Circle K would soon assign the stations to CAP as part of the asset exchange and thus Pennsylvania-based CAP and its affiliates would become Breaktime's landlord and fuel supplier." *Id*. at ¶ 16.

Faust further avers that "[w]hen Breaktime presented its '3-year Business Plan' to Circle K, Breaktime included CAP's logo on the presentation and referenced CAP throughout." *Id*. at 17.

Faust avers that he and Bashir had several important meetings at Lehigh's Allentown headquarters. *Id*. at ¶ 18. These included: 1) an all-day meeting on October 4, 2021 during which Faust and Bashir discussed Breaktime's alleged non-compliance with the EMV standard and possible renewal of the franchise relationship; 2) a one-hour meeting on October 21, 2021 in which Bashir and Faust again discussed Breaktime's alleged EMV compliance failures and during which Bashir agreed to reimburse Lehigh for approximately $1.8 million in EMV upgrades; 3) a meeting in November 2022, during which Bashir and Faust discussed "the approaching expiration of the franchise agreement  and to continue our discussion regarding possible renewal"; and 4) a meeting on March 1, 2023 during which Bashir and Faust made "one last attempt to negotiate a renewal of the franchise relationship." *Id*. at ¶¶ 19-22.

In response to the Faust affidavit, the Court directed Bashir to file a "supplemental affidavit fully addressing the averments contained in paragraphs 16 and 17 of the April 20, 2023 Affidavit of Glenn Faust, the Vice-President of Operations for CrossAmerica Partners." ECF 26.

In his supplemental affidavit, Bashir avers that "[t]he Breaktime Defendants signed agreements to do business with Circle K Stores, Inc., a Texas corporation, with employees located in Texas. That Circle K transferred and assigned the leases and fuel supply agreements to Plaintiffs, or intended to, was (1) unknown to the Breaktime Defendants while negotiating and executing the agreements; (2) was not approved by the Breaktime Defendants, who had no role whatsoever in the assignments and transfers; and (3) was done only after the Breaktime Defendants started operating the gas stations and convenience stores with Circle K." ECF 27-1 at ¶ 1.

Bashir further avers that he disputes Faust's averments in paragraphs 1 and  16 of his Affidavit in which Faust averred that he "'ha[s] personal knowledge'" that, "<u>at the time Circle K entered into the franchise relationship[s] with Breaktime</u>, both parties understood that Circle K would soon assign the stations to CAP as part of the asset exchange and thus Pennsylvania based CAP and its affiliates would become Breaktime's landlord and fuel supplier." ECG 27-1 at ¶ 2. (emphasis in original.) Bashir avers that "[i]t is impossible for Mr. Faust to have personal knowledge of any events or conversations that occurred between Circle K and the Breaktime Defendants—or what the Breaktime Defendants may or may not have understood—at the time the individual franchise relationships were entered into because, during that time period, **Mr. Faust did not even work for: (1) Circle K; (2) CAP; (3) Lehigh Gas Wholesale; (4) Lehigh**

**Gas** **Wholesale Services; (5) LGP Realty Holdings; or (6) any of the Breaktime**
**Defendants**. (emphasis in original.) Instead, while negotiations between Circle K and
the Breaktime Defendants began in the summer of 2018 and the individual franchise
agreements were being executed by the Breaktime Defendants between February 2019
and October 2019, as applicable, **Mr. Faust was working in the medical device**
**industry** for Beck Packaging (August 2016–April 2019) and Sklar Instruments (June
2019–January 2020), an industry he had worked in for more than thirty (30) years" *Id*.
(emphasis in original.) Bashir avers that he "did not speak to Mr. Faust for the first time
or meet him until approximately February 2020." *Id*.

Bashir avers that "during the negotiations for and when the individual franchise
relationships were entered into, it was my understanding, expectation, and intention that
the Breaktime Defendants would be getting into business with Circle K, with whom I was
already doing business with at other stations, not CAP, Lehigh Gas Wholesale, Lehigh
Gas Wholesale Services, or LGP Realty Holdings." ECG 27-1 at ¶ 4.

Specifically, Bashir avers that "[i]n the summer of 2018, Sherry Forbes, Circle K's
Texas Regional Business Development Manager who oversaw the existing Circle K
stations being operated by other entities I am associated with, informed me that Circle K
had a large number of gas stations with convenience stores located throughout the
country that Circle K was looking to lease. . .Ms. Forbes then asked whether we would
be interested in leasing and operating any of the stations. Initially, I asked Ms. Forbes if
Circle K was interested in selling any of the stations, but I was told Circle K was not
interested in doing so. At that point, I told Ms. Forbes that we would be interested in
leasing and operating one or more of the stations." ECF 27-1 at ¶ 5.

Bashir further avers that "[f]rom there, I began discussions and negotiations regarding the leasing and operation of the stations at issue in this lawsuit with, among other Circle K employees, Kenneth Frye, a Regional Business Development Manager for Circle K, and Gena Dunten, Circle K's Director of Administration and Programs, National Wholesale Fuels. . .Throughout the negotiations, I only spoke with Circle K employees. I did not negotiate any of the terms of the individual franchise agreements with employees of CAP, Lehigh Gas Wholesale, Lehigh Gas Wholesale Services, or LGP Realty Holdings. During the negotiations with Circle K, a number of Circle K representatives, including Mr. Frye, Ms. Forbes, and Marcello Ciminelli, Head of Circle K's Wholesale Fuels, came to the Breaktime Defendants' offices in Houston, Texas on multiple occasions to meet with me to discuss the potential of leasing and operating Circle K's stations at issue and to observe my entities' other operations in Houston, Texas. We had no meetings in Pennsylvania." ECF 27-1 at ¶ 6.

In response to Faust's averment that when Breaktime presented its 3- year business Plan to Circle K, Breaktime included CAP's logo on the presentation and referenced CAP throughout, Bashir avers that "[w]hile it is true that CAP's logo was included on the presentation and there were references to CAP in the business plan, the inclusion of the logo and other references to CAP were because Mr. Frye instructed me to do so. As Circle K and CAP were affiliates, owned or controlled by a common source, I did not question Mr. Frye." ECF 21-1 at ¶ 7.

Bashir next avers that "[a]s negotiations progressed, letters of intent were executed by Mr. Frye, on behalf of Circle K, and by me, on behalf of the Breaktime Defendants. CAP was not involved in the letters of intent in any way. . .I never executed

a letter of intent relating the stations at issue with CAP, Lehigh Gas Wholesale, Lehigh
Gas Wholesale Services, or LGP Realty Holdings." ECF 27-1 at ¶ 8.

According to Bashir, "the negotiations culminated with Circle K entering into
individual franchise agreements with each individual Breaktime Defendant, as
applicable, beginning in February 2019. . .When the individual franchise agreements
were entered into, I was never told that the stations at issue or the applicable individual
franchise agreements would soon be assigned to CAP. Nor was I told that CAP or
Lehigh Gas Wholesale, Lehigh Gas Wholesale Services, or LGP Realty Holdings would
become the Breaktime Defendants' landlord or fuel supplier or that the back-office
operations would be handled out of Pennsylvania." ECF 27-1 at ¶ 9.

Finally, Bashir avers that "in or around May 2019, I was made aware that certain
of the individual franchise agreements at issue were being assigned to Lehigh Gas
Wholesale, Lehigh Gas Wholesale Services, or LGP Realty Holdings, as applicable. At
that time, I contacted Ms. Forbes, who oversaw the operations of the applicable
stations, to inquire what impact, if any, there would be from such assignments. Ms.
Forbes told me that nothing would change from an operational standpoint and that
Circle K, operating out of Arizona and Texas, would continue to be the party the
Breaktime Defendants would be dealing with, and that the assignments were done for
internal tax reasons, as Circle K and CAP (along with its affiliates) were owned and/or
controlled through a common source. Based on my discussions with Ms. Forbes, I had
no understanding that CAP, Lehigh Gas Wholesale, Lehigh Gas Wholesale Services, or
LGP Realty Holdings would be involved in the operations of the stations at issue.
Instead, it was my understanding that Circle K would continue to be the party the

Breaktime Defendants would be dealing with. Indeed, Circle K did, in fact, continue to process operational invoices after assignments became effective." ECF 27-1 at ¶ 10.

**PERSONAL JURISDICTION**

"A federal district court may assert personal jurisdiction over a nonresident of a state in which the court sits to the extent authorized by the law of that state." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987) (citing Fed. R. Civ. P. 4(e)). This Court sits in Pennsylvania, which permits jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b); see also *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.,* 566 F.3d 94, 102 (3d Cir. 2009). Therefore, to determine whether personal jurisdiction can be exercised over the Defendants, the Court must evaluate whether, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Defendants have "certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *D'Jamoos*, 566 F.3d at 102 (quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

There are two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414 (1984). General jurisdiction exists where the defendant has contacts with the forum state that "are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted)). General jurisdiction does not require the underlying cause of action to be

related to the defendant's activities in the state. Plaintiff does not contend that the Court has general jurisdiction over any of the Breaktime Defendants.

On the other hand, a court has specific jurisdiction if "a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, (1985)). "Because this analysis depends on the relationship between the claims and contacts, [courts] generally evaluate specific jurisdiction on a claim-by-claim basis." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).

Generally, a district court analyzing its specific jurisdiction over a particular claim must conduct a three-part inquiry. *Danziger & DeLlano, LLP v. Morgan Verkamp LLC*, 948 F. 3d 124, 129-30 (3d Cir. 2020).  First, the court asks whether the defendant "purposefully directed his activities at the forum." *Id.* (internal citation omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.*,471 U.S. at 475 (citations omitted). Second, the court determines whether the plaintiff's claim "arise[s] out of or relate[s] to at least one of those specific activities." *Id.* (internal citation omitted). Third, and finally, "courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comport[s] with fair play and substantial justice." *Id.* (internal citations omitted). Here, the first inquiry is dispositive.

The Breaktime Defendants and Bashir actively entered into franchise agreements with Circle K. It is undisputed that Circle K is a Texas corporation that

operates out of Arizona. The franchise agreements contemplated operating service stations in Texas, Colorado, Kansas and New Mexico. None of the franchise agreements contemplated interaction with a Pennsylvania company. None of the franchise agreements contemplated operations in Pennsylvania. None of the franchise agreements required any performance whatsoever in Pennsylvania. Lehigh became the franchisor and landlord to the Breaktime Defendants and Bashir through absolutely no actions by the Breaktime Defendants or Bashir. In effect, the Breakstone Defendants and Bashir were "passive" buyers of the unilateral decision made by Circle K and Lehigh to assign the franchisee agreement from Circle K to Lehigh, a Pennsylvania corporation with headquarters in Pennsylvania. As a result, the Breaktime Defendants and Bashir had no choice but to engage with Lehigh in Pennsylvania. Indeed, Lehigh could have been headquartered in any of the other 49 States, and the Breaktime Defendants would have had no alternative but to passively due business with Lehigh in that particular State.  Simply put, the Breaktime Defendants and Bashir did not choose Pennsylvania. Rather, Pennsylvania, through Lehigh, chose the Breaktime Defendants and Bashir.

It is clear, based on the supplemental Bashir affidavit, that neither Bashir nor any of the Breakstone Defendants had any knowledge at the time they negotiated and executed the franchise agreements with Circle K that Circle K was soon planning to assign the franchise agreements to the Plaintiffs. ECF 27-1 at ¶¶ 1, 4, 5, 8, 9 and 10.

In addition, while Bashir may have made several trips to Pennsylvania to save the franchise relationship as averred to by Faust, again these trips were the result of the "random," "fortuitous" and "attenuated" circumstance that Bashir and the Breaktime

14

Defendants ended up, through no actions of their own, having to engage with a corporation headquartered in Pennsylvania.

The processing by Lehigh's accounting team in Allentown, Pa. of "tens of thousands of Breaktime transactions totaling in the hundreds of millions of dollars" constitutes nothing more than unilateral activity on the part of Lehigh in requiring that a Breaktime transaction be processed by its accounting team in Pennsylvania. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws*." Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283 (1958).

Finally, although some of the franchise agreements contained a choice of law provision stating that each would be governed by the laws of Pennsylvania, it is well-settled that such provisions are invalid and unenforceable as a matter of law. 15 U.S.C. § 2805(f)(2) ("No provision of any franchise shall be valid or enforceable if the provision specifies that the interpretation or enforcement of the franchise shall be governed by the law of any State other than the State in which the franchisee has the principal place of business of the franchisee.). Since the principal place of business of the franchisee, the Breaktime Defendants, is in Houston, Texas, the laws of Texas will govern the dispute.

Because the Court finds that the Breaktime Defendants and Bashir did not purposely direct to, or initiate any of its activities in, Pennsylvania, the Court lacks specific personal jurisdiction over the Defendants.

**<u>TRANSFER</u>**

Because the Southern District of Texas is a proper venue and has personal jurisdiction over the Defendants, the action could have been filed there at the time it was commenced and may therefore be transferred there pursuant to 28 U.S.C. § 1631 if it is in the interest of justice. Such a transfer is in the interest of justice because it will prevent the duplication of filing costs as well as other administrative burdens that may arise from a dismissal. *See Lawman Armor Corp. v. Simon*, 319 F. Supp. 2d 499, 507 (E.D. Pa. 2004) ("Normally transfer will be in the interest of justice because dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." (quoting *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 257 F. Supp. 2d 717, 734 (S.D. N.Y. 2003))). The Court will therefore direct the clerk to transfer this case to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1631.